Welcome. I see we have a full courtroom today. Not surprising. We have four cases and an awful lot of lawyers here today. All right, first up, we will start with U.S. Securities and Exchange Commission v. Spartan Securities Group, Ltd., Island Capital Management, Carl E. Dilley, Micah J. Elred, 22-13129. Counsel, Ms. Rollins, you have 13 minutes. You've reserved two for rebuttal. You may proceed. Thank you, Your Honor. I may it please the Court. My name is Karen McKenna Rollins with the New Civil Liberties Alliance on behalf of the appellants, defendants in this matter. Like the SEC and the Financial Industry Regulatory Association, FINRA, my clients were repeatedly and systematically lied to by proven fraudsters. Here today, we're dealing with the remaining count after a 12-day trial where the jury found no liability on 13 of 14 counts and fully released one defendant of any liability at issue. That remaining count is a violation of Rule 10b-5b under the Exchange Act. That rule restricts material misrepresentations and materially misleading omissions made in the connection with the purchase or sale of security. There's multiple elements to that test. There's no sufficient evidence to support the court's ruling on the Rule 50b motion, and the court erred in granting the same. Critically, in this case, the SEC has waived any argument before this court that the 19 statements in Jury Instruction 19 were omissions. That's particularly important as to Mr. Eldred, because all of the statements that he allegedly made were effectively omissions. The SEC has made no argument on that point there. They've all said that they are affirmative statements, and that falls under a different test. Furthermore, the District Court erred because it abused its discretion in ordering disgorgement and certain civil penalties in this case, as well as denying the right to jury finding on the facts necessary to establish the tier level of the penalties under the Exchange Act. Can I ask you about the last thing regarding Mr. Eldred? You have a lot of issues. I know you want to hit a lot of them. It sounds like you want to hit the sufficiency of the charges with regard to Mr. Eldred specifically, and regarding the fact that he didn't make affirmative misstatements, he made omissions, and yet that wasn't argued by the SEC. Would I understand your argument? That's part of our argument, yes, Your Honor. Okay. What about the statement, and I'm looking at Docket Entry 255-62 at page 8, and this is the Form 211 cover letter signed by Mr. Eldred, which said that the cover letter stated that Micah Eldred of our firm was telephonically contacted by the spouse of Mr. Zola, President of Top to Bottom, and that that was not true. Your Honor, so I want to differentiate between two sets of statements in the communications with the Form 211 applications. That's why this is hard. That's why this is hard. So on the Mermin and Rose Form 211 applications, which were signed by Mr. Dilley, there is evidence and discrepancies in the record about whether or not Mr. Dilley, in fact, had all those conversations. It was his standard practice to speak to all issuers before filing the Form 211s. However, even if this court were to find that that statement was a mis- that that was a misstatement, it's not material. So that's the Mermin and Rose issues. Turning to the Daniels-Harrison fan issuers- You're telling me it's not material that they were contacted by real presidents of real companies when, in fact, they never were contacted by those companies? That's not material? The only- By the way, that's different than the omission issue. Right. Yes, Your Honor. And the only- In the record, the only sort of evidence at all of any materiality of those statements is that it might have been of interest to FINRA, which is a third-party regulator. And as we cite in our papers, the Ganino case suggests that an investor- that an investor might have considered a piece of information does not make it material. It needs to be something more. But specifically as the Harrison-Daniels fans companies, those statements about the conversations between Mr. Eldred and those issuers, the testimony supports that those conversations occurred. So that's where there's a differentiation in the factual record. There's some contrary evidence. I mean, I understand that there's some evidence to suggest they did occur, but there's also evidence that they did not occur, correct? As to the Daniels-Harrison fan companies, which were four of the five were signed by Mr. Eldred, I believe the testimony is consistent that he had conversations with those issuers. I thought here-so I asked you about the cover letter regarding Mr. Zola or the reference that Mr. Zola testified. There was then evidence, and this is at Documentary 190, page 27, that Rose testified that he and Merman told the issuer CEOs not to contact Spartan or any of its employees. Right. So that's the Merman and Rose companies. Mr. Eldred didn't sign any of those Form 211, so he cannot be held liable for the statements or misstatements or omissions made in those. But the statement on there is that he spoke with that person, right? I mean, a jury can infer that he, in fact, did or did not do that, correct? So I believe top to bottom pressure washing is a Daniels-Harrison fan. Merman and Rose are completely-so this is one of the complications. I understand it is a Daniels-Fan Harrison company. That's right. Right, so that Mr. Merman didn't speak or told the issuers not to has no impact on the veracity of that statement and a Daniels-Harrison fan. They're two different, as the SEC alleged below, two different schemes by two different sets of individuals that have sort of overlapping mix. It's one of the complications, I think, in the factual record here. So that statement, as I understand it and the testimony below, as to Mr. Eldred and the Daniels-Harrison fan companies was true when it was made. And Mr. Eldred did not sign any of the cover letters at all? He didn't sign any of the cover letters for any of the Merman and Rose companies. He only signed four for the Daniels-Harrison fan. Right, and as to those, he said that there was no-for instance, on one of them, we'll look at docket entry 255 at 62 at 8, the same that I told you before, it stated that Spartan Securities Group does not have any other relationships with top to bottom or any of their other representatives, and that was not true, correct? No, that is a true statement. So relationship is a term of art. As the testimony below suggests, what FINRA was looking for were relationships, like contractual relationships between parties. You'll see conversation about promoters. Did Mr. Eldred testify at docket entry 253 at page 35 and at page 80 that that statement, the specific one, that he did not disclose all the business relationships with Harrison in there? Didn't he say that? And what we would say is that that's not material. Ms. Harrison was an attorney. So you keep switching it on me. So we started by talking about omission, and then we started talking about a misstatement. So here there's a misstatement. That's clearly a misstatement. Now you're saying that's not material, right? Well, right, and that's part of the test, right? The misleading, the misrepresentation must be material. Diane Harrison at that time was an attorney in securities practice. She was involved with many issuers, even issuers beyond the ones in this case. And that's, you know, so that's a. . . It wouldn't be material to an investor where the issuer says that they have no relationship with someone outside any other relationship other than the one disclosed, and that's not, in fact, true. They did have this relationship with these other people that weren't disclosed. You're telling me that wouldn't be relevant to an investor? No, and there's no sufficient evidence in the record. It might be material to FINRA, who's a third-party regulator. There's no evidence in the record suggesting that an investor might find it, at a minimum, might find it material. And so the materiality test is but one portion of the Rule 10b-5b analysis. And we think one of the stronger arguments is whether or not these misrepresentations or omissions coincided with the sale of security. The test, and I understand the Exchange Act is meant to be read broadly in order to fulfill the remedial purpose. However, courts time after time say it must be in connection with a sale. It must coincide with a sale. Coincide means to happen contemporaneously. It doesn't say coincide. It says in connection, right? Well, the Zanfer case suggests that in connection with means coincide. And so what the SEC's position and the district court accepted below is a broad reading of the statute that touches on any aspect of the approval process, ignores the fact that there is a third-party regulator as an intermediate. We've never said that it has to be contemporaneous with, have we? Well, the Zanfer case has said that it must coincide with and coincide as sort of a colloquial meaning suggests a temporal relationship between the fraudulent act or the alleged fraudulent act and the statement itself. We've said, for example, that it is, quote, it is enough that the fraud touched the sale in some manner, right? We said that in Rudolph v. Arthur Anderson, right? Yes, and our point is that there is no sale that this touched. The SEC's position is, well, this is the first step, and as I believe it was this court said in Goebel. Isn't that a necessary step to get listed? It's one, but as the record shows below, Mermin and Rose particularly were using multiple broker-dealers in order to bring these two. The sale could not have happened if it wasn't listed, right? I will put a caveat to that that, yes, these types of sales could not have happened, but there are ways that sales could happen without the listing having gone forward. Right, so the way that this is listed, it's on an exchange, and that gives the peace of mind to a buyer that wouldn't have happened but for this. How can we not say that this is not in connection with that sale then? Well, and I would like to point the court to SEC v. Goebel. In that case, the first steps that occurred that the SEC alleged was a 10b-5b violation was the recording of a sham transaction, and that sham transaction set the whole process off, which is, as I understand your argument, this sets the whole process off. I don't have any arguments. I'm asking the question. The question, sorry, Your Honor, sets the whole process off. What the court said in Goebel is those first steps aren't sufficient to find a 10b-5b violation, and our point here is that these first steps are too remote, too removed, and again, there is a third-party regulator, and the testimony is clear on this. FINRA does not have to clear an application. They can ask as many questions as they want back to the issuer, and the way that most 211 applications essentially die is not that they're denied. It's that they just ask questions, and the issuer stops answering them, and they're never cleared, and so that sort of intermediate force in this process separates it from a direct sale or purchase. But they got cleared because of the misrepresentation, right? That's not necessarily true. FINRA was satisfied with the representations that were made when it asked questions, and I want to say in all the instances, the responses back to FINRA were the issue, with the exception of the statements you identified about who introduced who to whom. The issuer has represented. Wasn't the testimony that FINRA would not have approved if it knew all the relationships? The one FINRA investigator. Am I correct in stating what the testimony is? That it might have been of interest. It might have been of interest. It wouldn't have meant that the application didn't ultimately clear, but it might have been of interest, and that's, as we said in the Ganino case, might be of interest to an investor isn't sufficient. That something might be of interest to a regulator is even less than that, and that would cause a failure in the materiality analysis. But we have noted that the materiality assessment is peculiarly for the trier of fact, so how can you argue here that a reasonable jury couldn't have found that the appellant's statements or misrepresentations were material to investors? That would be because there's a complete failure of evidence about how investors would consider this information at all. The only testimony that even suggests that investors might find this of interest was the SEC's own expert, and as we point out in our papers, he was sort of an expert on everything, despite lacking the skill set knowledge, particularly on the transfer agent side. And so that's the only evidence in the record. And he testified that an investor would find it relevant if somebody is listed on the pink sheets and has been approved or accepted by FINRA, right? Yes, and there's no other evidence in the record regarding that. Your Honors, I see my time is about to expire. No, your time has expired, but you do, unless you have a response to his question. Otherwise, you have reserved time for rebuttal. No, Your Honor. Thank you. Thank you. Counsel?  Your Honors, may it please the court, Daniel Staroselsky for the Securities and Exchange Commission. This court should affirm the district court's judgment because the trial evidence was sufficient to permit a reasonable jury to find the defendants liable. All right, so let's break down what your opposing counsel argued to us. So the first thing she argued to us is that with regard to Mr. Eldred specifically, that he only made omissions and not affirmative misrepresentations. And the SEC both didn't charge and didn't charge the jury with omissions, only misrepresentations. Is that correct or not? That's incorrect, Your Honor. Tell me why. It's incorrect because if you look at the bullet point list of alleged misrepresentations and omissions, that starts at, I believe, page 38 of the jury instructions. It talks about, it identifies these things as misstatements or omissions. We haven't waived it in our brief. I'd point the court to page 26 of our brief where we talk about some of the omissions that Mr. Eldred made. But you don't even need to reach that at all because Mr. Eldred's affirmative misstatements are sufficient to establish liability. In particular, I would point the court to the changing tech form 211, and there Mr. Eldred certifies that he has no relationship with changing tech other than being introduced to it. But at the very same time that he's making that statement, at the very same time he's negotiating a merger of Spartan and Island into changing tech. That testimony is at Supplemental Appendix 7-7 through 7-8. If you want to see the background of that statement, it starts with Supplemental Appendix 7-6-5. Sorry, it's not changing tech, it's court 211. So opposing counsel then says that that statement regarding relationships is just not material to an investor. It might be material to FINRA in its acceptance of them, but it's not material to an investor as part of the investing decision. What evidence is there in the record? Because your opposing counsel says there is just a dearth of evidence regarding materiality here. What evidence was there in the record such that a jury could conclude that that misstatement was material? It's the evidence that we cite in our brief. It comes from Spartan's own compliance manual. It comes from the FINRA examiner. We're in the micro-cap space. This is an area where investors already suffer from a dearth of information. It's an area that Congress found is pervaded with an overwhelming amount of fraud and abuse. The misstatement is about who controls the company, what its business is. It's hard to imagine information that is more material to a reasonable investor, or at a minimum, as Judge Branch has alluded to, a reasonable jury could find that it was material. Is there any evidence to support that? You mentioned the manual, and you mentioned FINRA regulations. I mentioned the FINRA examiner's testimony. How did he testify to it? He testified about just the importance of the Forms 211. I apologize, I don't have his particular testimony in front of me. To FINRA or to investors? Well, it's to both, Your Honor. It's important to FINRA because, to your question, on the Form 211 on page 1, it says that the form is submitted to initiate a quotation of public stock, and at the very end, FINRA says it approves the stock for trading in reliance upon the misrepresentations. But the information is material to investors as well because it goes to who controls the company, what the company is doing. Is all information that's material to FINRA material to investors? Pardon me, Your Honor? Is all information that's material to FINRA necessarily material to investors? Your Honor, we're not asking the court to go that far. I think Goebel illustrates that under this court's case law, that's not true. We're just saying that in this case, a reasonable jury could find that this particular information was material to investors. But the information is, this is very different from Goebel. In Goebel, it was an internal, purely internal record. There was no trading at all, and the deception was about the broker-dealer's capital reserves, which is, this court said, you know, that's relevant to an investor's choice of broker-dealers, but not to an investment decision. But that's not this case. The information here is relevant to investment decisions, and the evidence at trial bears that out. Your opposing counsel then says that, at the very least, it's not made in connection with the purchase of securities. It was done for purposes of getting listed on FINRA, and that doesn't coincide with the purchase decision. That's, as I understand, your opposing counsel's argument. Sure. So I think that argument is mistaken for the reasons that Your Honor brought up. Again, the FINRA, these are outward-facing documents. FINRA clears the stock for quotation in reliance upon the representations made in the Form 211. So is it a but-for test, or does there have to be some temporal component to it? The test is misrepresentation or omission in connection with the purchase or sale of any security. I know what the statute says. I just, what I'm asking is, in connection with, that shows, that indicates some sort of causal relationship, and I'm trying to understand the nature of that causal relationship. Does it require some sort of temporal component to it? Is it just a but-for test? But-for this, this would not have happened. Investor would not have invested here. That seems to go to materiality, different from in connection with. How does that add anything? The Supreme Court said in Neftalen, this isn't construing the in-offer or sale requirement, but the court says it's used interchangeably with in connection with, that the phrase is broad enough to encompass the entire selling process. There are limits on in connection with. We know from Gobel, we know from Zandford, that it's not enough that something just happened to involve a purchase or sale of a security. It's a catch-all, but what it catches must be fraud. And there could be difficult cases at the margins. We know from Gobel, we know from Zandford what those margins are. So what does it mean to coincide? I mean, what does it mean to coincide with the sale of securities? In Zandford, the court said it coincided because the deception and the sale were not independent events. They were part of the same scheme. That's a scheme case, but that's what the court is saying. The court has any further questions? Do you want to address any of the other issues? I'm sorry, go ahead. I have a couple questions. Yes, Your Honor. I'm concerned about the injunction in this case. I look at it as a, obey the law injunction. Yes, Your Honor, and Your Honor is talking about not the restraint against penny stock participation. No, I'm talking about Yes, well A list of things, yes. Let me ask another question and then you can respond. Yes, sir. Tell me what your motion for an order to show cause would contain to enforce the injunction under the court's contempt power. What would you put in the motion? We would have to put in clear evidence of a violation of the injunction's terms. Would you put anything more or less, anything less than what you would put in a complaint if you filed it in district court? I'm not sure about that, Your Honor. Well, if you could do less than what you would do in district court, there'd be no need ever to go to district court, would there? I apologize, Your Honor. I don't follow. Well I mean, let me just say this about this. To enforce an injunction, the first thing you'd put in the motion is you'd put the injunction's terms in it. Right. So, Your Honor, first of all, this has not been challenged by the defendants but, Your Honor, the district court was very . . . Well, forget that it's not challenged. I'm still asking the question because we got to publish an opinion and it's going to be out there in the ether for people to read. All I want to know is whether you would put less information in the motion for order to show cause than you would have to put in a complaint in order to withstand a 12B6 motion. I'm sorry, Your Honor. I just don't know the answer to that question. I'd be happy to . . . Well, let's assume that the motion for order to show cause would contain what you would put in a complaint in a district court action. If that's the case, then what you're doing is you're transferring the district court action into the contempt proceeding. Do you agree? You're changing the . . . let's suppose hypothetically, this injunction is issued in the Middle District of Florida, right? Yes. Okay. Let's suppose an enjoined defendant does something in Georgia or Tennessee or some such place, and the government, the SEC, thinks they violated the injunction. Speaking for myself, I think the motion for an order to show cause would have to have the same thing you would file in Tennessee in a complaint in the district court or in Georgia. So you'd be transferring the civil action to the district court in a contempt proceeding. Then tell me what the burden in the contempt proceeding would be on the defendant. Your Honor, I believe . . . You guys issue these all the time, so you must have some idea. I believe we have to show that violation. You know what, I'm just not prepared to talk about this today, Your Honor.  Let me just tell you some of my concerns. Yes, Your Honor. One concern is that if you have to have the same information in the motion for order to show cause, you would have to put in a complaint filed in Tennessee in district court, then you're moving the forum to the district court here. Second thing is that in order to show cause, the defendant would have to come forward with an innocent explanation, whereas in Tennessee in the district court, the defendant wouldn't have to do anything. Third thing, the defendant in Tennessee would have a right to trial by jury and he wouldn't have a right to trial by jury in the contempt proceeding. So the fourth thing is if you have an adequate remedy of law, which you surely have, unless you don't need to do what the law requires, then the injunction should never issue if there's an adequate remedy. Then I have another problem with it. The injunction regulates speech, doesn't it? The way it's written. Let's assume that the injunction did not refer to the securities laws. It just enjoined the defendant from making all the representations that are listed in the injunction. Your Honor, the district court was mindful of this court's decisions and Smyth and Goebel and all of the court's decisions. This hadn't been discussed in those cases. It is regulation of speech. Do you agree with me? Yes. It forbids making misstatements or omissions. If the court issued an injunction which simply said, you can't tell the following things, you can't say the following things, the injunction would have problems, wouldn't it? An injunction has to be definite. It has to advise the defendant of what the defendant needs to. This is a little unfair because it wasn't brief. I mentioned it because these injunctions appear. You cited about seven cases in your brief in support of the injunction and none of them contained anything like these issues. Your Honor, I mean, I guess all that I can say is that the district court was very, very mindful and we know Your Honor in particular is concerned about obey the law injunctions and the court went to great lengths to ensure that that was not what was going on here. It narrowed our requested relief. It's very mindful of that issue and the defendants have not challenged it. I understand Your Honor still has concerns but the district court was very mindful of this issue when it crafted the relief. Well, if it crafted an injunction which simply says don't violate, which it didn't say that, don't violate 10b-5 by saying the following. Your Honor, but that's not what the court did. The court said it was taking care to time the injunction. Oh, I know the court was taking care about obey the law but the court didn't say a word about adequate remediate law, did it? No. That's a cardinal rule in every injunction, is it not? Your Honor, I mean, you know, the Supreme Court in Hecht against Bowles talked about how, talked about the standards governing relief in injunctive actions by the government and yes, it's done against the background of hundreds of years of equity practice but at the same time, the standards of the public interest, not private litigation is what governs relief, what governs how an injunction. The matter of injunctions and adequate remedy law go back to 1789 in the initial jurisdiction statute, do they not? Principles of injunctive relief go back centuries. There's a provision that says an injunction will not issue ever if there's an adequate remediate law. Your Honor, I'm very sorry. I'm just not prepared to discuss these issues today. I just want to emphasize we're mindful of this court's concerns. The district court, more importantly, was mindful of the court's concerns. It took great care to wrap the injunction. Well, you want a far broader injunction than what the court issued. We did ask for broader relief. That was our submission to the court and the court pared it back and if the defendants had appealed the injunction, then we would have a . . . We are having a discussion about it. The defendant appealed the judgment. Yes, Your Honor, but I mean it's not . . . The defendant has made the argument I've just presented, not as an argument, but really. The defendant did appeal the judgment. Of course, Your Honor. I don't want to downplay your concerns. We appreciate them. It's just that this case was not brought to this court raising those particular issues. There are a lot of issues, as Judge Luck alluded to. This was not one of them. Well, one of the reasons that I asked the question is that all of the arguments both sides have made about materiality, for example, and in connection with, have a bearing on what the court's issues with the injunction. All of those findings went into the injunction. I mean, I think the key . . . The likelihood of what? I think the key finding underlying the injunction is that the district court makes a finding that there's a reasonable likelihood of future misconduct. Yes, by basing it on the evidence that was presented and the arguments that are made here. Well, you look to the past to inform, to make a reasonable and informed prediction about the future, but it's a forward-looking remedy. I realize that. Of course, of course. You've answered the question. I appreciate that, Your Honor. Unless the court has any further questions, I ask that you affirm the judgment. Thank you. Ms. Rollins, you have ten minutes. Thank you, Your Honor. Judge Luck, I would like to start with your question regarding but-for causation. I'm aware of no case in the securities enforcement context that says the in-connection-with is a but-for causation test. The best we have is the guidance from the court saying it coincides with. And as we suggest, coincide has a temporal meaning, at least colloquially speaking. And so, as we know from Goebel, a first step, mind you, that sham transaction in Goebel that was written down, the individual knew it was a sham transaction when they wrote it down. That's far afield from sort of the circumstances here where, as we said, the schemes of these other individuals, which there's no finding of scheme liability, only worked, and this is Mr. Burroughs' testimony, if they were never found out. But you're certainly right that this isn't a scheme case, but if coincides means in the course of a scheme, meaning at some point here and at some point here a transaction happened, then wouldn't that stand to reason that a misrepresentation can be here and downstream that would have an impact on the purchase of securities? No, Your Honor. As we say in our papers, misrepresentations and materially misleading omissions are discrete actions that happen at specific points in time and need to be analyzed as such. I agree with that. In other words, it is its own unit of prosecution.  But in connection with is a broad term, and it would seem to encompass under the Supreme Court's own case, downstream effects from that very thing. I would agree with you to some extent. I think that the problem is, and there are cases I believe in this context, and I cannot recall them right now, that the concern the court does have is you don't want in connection with requirements swallowing the rule or going into other elements of Rule 10b-5 violations, other ones. And so as to that point, I think that that's where the temporal nature of coincide matters, particularly in this case, where, again, there's an intermediate individual, a third-party regulator, making decisions of their own sort of free volition before anything can happen. And I just think that that's just too remote to meet that in connection with test. Let me ask you a quick question on materiality, specifically just sort of jumping off your last sentence there. Let me ask the opposite of the question I asked your opposing counsel. You're not suggesting that what is material to FINRA is never material to investors. You're just saying that this information might have been material to FINRA, but it wasn't necessarily material to investors. That's correct. And that also goes to the failure of proof. There's no sufficient evidence. There is no evidence in the record that any investor would find this material. And I think that that defeats the finding of the violation in and of itself. All right. Thank you. Thank you. We have your case under advisement. Thank you to both sides. I'm going to go ahead and call the next case, but obviously give them time to depart and you to get set up.